UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ALLIED PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>  v.<br><br>DICK HARRIS, INC. dba DICK HARRIS INSURANCE COMPANY,<br><br>       Defendant.<br>_____/ | NO. CIV. 2:13-00325 WBS DAD<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>MOTION TO DISMISS</u> |

----oo0oo----

Plaintiff Allied Property & Casualty Insurance Company ("Allied") brings this action against defendant Dick Harris, Inc. dba Dick Harris Insurance Agency ("Dick Harris") for negligence, negligent misrepresentation, and declaratory relief arising from a dispute regarding an insurance policy issued to plaintiff's insured. The matter is before the court on defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), failure to

1

join a necessary party pursuant to Rule 19, and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

I.  Factual Background

As of 2006, Gary and Linda Nibbelink ("the Nibbelinks") owned at least five residential properties, including a property in El Dorado County with a dwelling on it, known as Strawberry Meadow (the "Strawberry Meadow Property"). (Compl. ¶¶ 6, 11 (Docket No. 1).)  For each of those properties except the Strawberry Meadow Property, plaintiff issued the Nibbelinks liability insurance policies, either homeowner's or rental dwelling policies. (Id. ¶ 12.)  Plaintiff alleges that the Nibbelinks never requested that it provide liability insurance for the Strawberry Meadow Property, but instead had a dwelling policy issued by a different liability insurer that defendant procured. (Id. ¶¶ 13-14.)

In August 2006, the Nibbelinks applied for a personal umbrella liability insurance policy from plaintiff. (Id. ¶ 15.) Such a policy would generally provide liability coverage to the Nibbelinks in excess of the limits of their underlying liability policies. (Id.)  Plaintiff alleges that defendant acted as the Nibbelinks' insurance broker and agent in connection with procuring a personal umbrella policy from it. (Id.)  To obtain the umbrella policy, the Nibbelinks had to submit an application that requested them to list each of their residences. (Id. ¶ 16.)  Plaintiff alleges that defendant submitted and prepared the Nibbelinks' application, but failed to list the Strawberry Meadow Property, even though it was aware of the property's existence.

2

(Id.)

Relying on the representations in the application, plaintiff issued the Nibbelinks Personal Umbrella Policy Number PEC 7832308873 (the "Umbrella Policy"), but alleges that if it had known of the Strawberry Meadow Property, it would have added a standard form endorsement to the Umbrella Policy excluding coverage for liabilities arising from the property because its underwriting guidelines prohibit it from issuing such a policy to cover a property the size of the Strawberry Meadow Property. (Id. ¶¶ 18-20.)

Plaintiff alleges that it is presently defending the Nibbelinks under the Umbrella Policy in a lawsuit in state court, known as Wang v. Highway 50 Association, et al. (the "Wang action"). (Id. ¶¶ 5, 8.) The plaintiff in the Wang action was allegedly struck and trampled by a horse that escaped from the Strawberry Meadow Property during a recreational event known as a "Wagon Train," wherein old-time stage coaches accompanied by horses with riders travel throughout Northern California simulating the "Old West."[1] (See id. ¶ 6; RJN Ex. C ("Wang

---

[1] On a motion to dismiss, the court may properly consider documents attached to the complaint, documents incorporated by reference in the complaint, and matters properly subject to judicial notice without converting the motion into one for summary judgment. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.
Defendant requests that the court take judicial notice of the State of California Court of Appeal, Third Appellate District Court's Order in the Wang action that the order appealed from is nonappealable; the summary judgment order in the Wang

3

Compl.") ¶¶ 1, 7.)  Plaintiff alleges that the Nibbelinks' liability in that lawsuit is based solely on their status as owners of the land from which the horse allegedly escaped. (Compl. ¶ 7.)  It also alleges that it "has already incurred and continues to incur substantial attorney's fees, costs, and other expenses in defending the Nibbelinks against the Wang [action] and in prosecuting the [action]."  (Id. ¶ 21.)  In addition to its duty to defend, plaintiff has a duty to indemnify under the Umbrella Policy and alleges that in the event a judgment is issued against the Nibbelinks in the Wang action or a settlement is reached, it will be forced to incur additional damages in paying a judgment or funding such a settlement.  (Id., Ex. A.)

One of the homeowner's policies issued by plaintiff to

---

action; and the complaint in the Wang action.  (Request for Judicial Notice ("RJN") Exs. A-C (Docket No. 10-3).)  The court will take judicial notice of these exhibits with the caveat that "[w]hile the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents (the underlying arguments made by the parties, disputed facts, and conclusions of applicable facts or law) are not."  United States v. S. Cal. Edison Co., 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004); see also Harris v. County of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (explaining that courts may judicially notice documents on file in federal or state courts and taking judicial notice of a declaration filed by defendant in an earlier litigation); Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (court may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion).

The court also notes that it may consider the homeowner's policy issued by plaintiff to the Nibbelinks, (Harris Decl. Ex. A ("Homeowner's Policy") (Docket No. 10-2)), even though it was not attached to the Complaint because it was referenced in the Complaint, it is central to plaintiff's claim, and plaintiff does not dispute its authenticity.  See United States v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011) ("We may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.").

4

the Nibbelinks includes personal liability coverage in addition to property coverage ("Homeowner's Policy").  (Harris Decl. Ex. A ("Homeowner's Policy") (Docket No. 10-2).)  Plaintiff does not allege that it is defending the Nibbelinks under that policy.  In the section pertaining to personal liability coverage, however, the Homeowner's Policy provides that "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damages caused by an occurrence to which this coverage applies, we will . . . pay up to our limit of liability for the damages for which the insured is legally liable . . . ."  (Id. at 13.)  An "occurrence" "means an accident, including exposure to conditions, which results, during the policy period, in . . . bodily injury."  (Id. at 1.)  One of the exclusions to coverage under the Homeowner's Policy provides that it "do[es] not apply to bodily injury . . . arising out of a premises . . . owned by an insured . . . that is not an insured location."  (Id. at 14.)

II.  Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  In deciding whether a

5

plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).

### A.   Negligence and Negligent Misrepresentation

Under California law, to state a claim for negligence, a plaintiff must allege duty, breach, causation, and damages. Conroy v. Regents of Univ. of Cal., 45 Cal. 4th 1244, 1250 (2009). Negligent misrepresentation is a species of the tort of deceit and to properly state a claim, a plaintiff must allege a misrepresentation made by one with no reasonable grounds for believing it to be true. Id. at 1255. It must also allege justifiable reliance and resulting damages. Id.; Goehring v. Chapman Univ., 121 Cal. App. 4th 353, 364 (4th Dist. 2004). To show causation, a plaintiff must prove: "(1) that the defendant's breach of duty (his negligent act or omission) was a substantial factor in bringing about the plaintiff's harm and (2) that there is no rule of law relieving the defendant of liability." Leslie G. v. Perry & Associates, 43 Cal. App. 4th 472, 481 (2d Dist. 1996).

On a motion to dismiss, the court considers whether "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In its motion to dismiss, defendant argues that plaintiff cannot state a claim for negligence or negligent misrepresentation because it

6

cannot establish the element of causation.[2]

To summarize defendant's argument, plaintiff is obligated to defend the Nibbelinks under the Homeowner's Policy it issued them, but plaintiff has wrongfully denied coverage under that policy based on an exclusion for bodily injury "arising out of a premises . . . owned by an insured . . . that is not an insured location" ("premises exclusion").[3] (Homeowner's Policy at 17; see Mem. in Supp. of Mot. at 16:6-7 (Docket No. 10).)  Defendant contends that as a matter of law that exclusion does not preclude coverage based on the allegations in the Wang complaint even though the Strawberry Meadow Property is not an insured location.[4]  (Reply at 5:18-23

---

[2] Plaintiff contends that the court cannot consider this argument because to do so requires the court to consider the merits of plaintiff's claims. (See Opp'n at 14:4-11 (Docket No. 12).)  Plaintiff suggests that defendant's argument is more properly considered a defense that should be pursued on summary judgment. (See id.)  However, if the facts alleged in the Complaint and the documents the court may consider show that plaintiff cannot state a claim for relief as a matter of law, the court may properly dismiss the claim on a motion to dismiss.

[3] The section regarding personal liability coverage in the Homeowner's Policy provides that "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damages caused by an occurrence to which this coverage applies, we will . . . pay up to our limit of liability for the damages for which the insured is legally liable . . . ." (Homeowner's Policy at 13.)

[4] A "'liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity . . . . [T]he carrier must defend a suit which potentially seeks damages within the coverage of the policy.'" Hudson Ins. Co. v. Colony Ins. Co., 624 F.3d 1264, 1267 (9th Cir. 2010) (quoting Montrose Chem. Corp. of Cal. v. Superior Court, 6 Cal. 4th 287, 295 (1993)) (alterations in original). The defense duty is triggered by "a bare 'potential' or 'possibility' of coverage." Montrose, 6 Cal. 4th at 300.  "'[T]he insurer's duty is not measured by the technical legal cause of action pleaded in the underlying third party complaint, but rather by the potential for liability under the policy's coverage as revealed by the facts

7

(Docket No. 13).) Therefore, plaintiff's expenses in defending the Nibbelinks were caused by its obligation under the Homeowner's Policy, not by any obligation arising from the Umbrella Policy. (See Mem. in Supp. of Mot. at 15:11-13; Reply at 6:6-10.) Further, defendant argues, even if plaintiff is required to indemnify the Nibbelinks under the Umbrella Policy for any judgment or settlement obligation that exceeds that covered by the Homeowner's Policy, any such damage is only hypothetical and contingent at this time. (See Opp'n at 17:14-18.)

Coverage under a written insurance policy is an issue of law. State Farm Mut. Auto. Ins. Co. v. Crane, 217 Cal. App. 3d 1127, 1132 (3d Dist. 1990). In interpreting the language of an insurance policy, a court should give the words used their plain and ordinary meaning. Giddings v. Indus. Indem. Co., 112 Cal. App. 3d 213, 218 (4th Dist. 1980). If policy language is unambiguous, it must be interpreted according to this plain meaning. Rosen v. State Farm Gen. Ins. Co., 30 Cal. 4th 1070, 1074 (2003). If, however, the policy language is ambiguous, the ambiguous terms "'are resolved in the insureds' favor, consistent with the insureds' reasonable expectations.'" Safeco Ins. Co. of Am. v. Robert S., 26 Cal. 4th 758, 763 (2001).

The parties do not contend that the language of the Homeowner's Policy--and specifically the premises exclusion--is ambiguous. The court agrees that it is clear. Instead,

---

alleged in the complaint or otherwise known to the insurer." Hudson, 624 F.3d at 1267 (citing CNA Cas. of Cal. v. Seaboard Sur. Co., 176 Cal. App. 3d 598, 606 (1st Dist. 1986)).

defendant argues that the application of the premises exclusion in this case is directly governed by Safeco Insurance Company v. Hale, 140 Cal. App. 3d 347 (1st Dist. 1983).  There, Sue Hale offered to care for Boots, a friend's horse, and she took Boots to land that she owned but was not insured by her homeowner's policy.  Hale, 140 Cal. App. 3d at 350.  On the night of the incident, Boots and another of his equine companions got out of the corral.  Id.  Boots was involved in a multicar collision two miles down the road in which a woman suffered serious injuries. Id.

        To resolve whether the personal liability provision of Hale's homeowner's policy required the insurer to defend her and her husband in a suit by the injured woman, the court interpreted a premises exclusion worded similarly to the one at issue in this case.  The court explained that "an animal--whether dog or horse--is not within the fair connotation of the word 'premises' so that when the animal is taken from one 'premises' to another 'premises' and there bites a child the injury to the child cannot be said to be 'arising out of' either premises."  Id. at 353. Ultimately, it held that "[s]ince the injuries caused by Boots originated from the allegedly tortious conduct of the Hales in failing to secure the horse on the . . . premises, and not from any condition of the premises on which the animal was located, the language of exclusion 1(e) does not apply."  Id. at 354.

        Unlike in Hale, however, the complaint in the Wang action does not allege that the insured had responsibility for securing the escaped horse.  Instead, the Wang complaint alleges that Robert Burnley, the horses's owner, negligently "tied down"

9

his horse, which then escaped from the Strawberry Meadow Property and harmed the plaintiff, who was in a nearby parking lot. (Wang Complaint ¶¶ 7, 11-19.)  As to the Nibbelinks, the Wang complaint alleges that they:

> (1) [K]new well there needed to be an adequate number of safe and sufficient containment options for [e]vent participants . . . so that horses on the trip could be safely secured--but still they failed to assure that they were so provided in adequate number; (2) failed to assure that they, or the [group organizing the event], promulgated, provided, and distributed rules and regulations that would assure safe and proper use of containment options upon their property by [e]vent participants; (3) failed to assure there was trained staff in adequate numbers to enforce safety rules and regulations so as to assure safe usage of containment options on the . . . [Strawberry Meadow] [P]roperty; (4) failed to make adequate repairs and improvements to existing fencing surrounding the [Strawberry Meadow] [P]roperty, so as to make certain that the property would be enclosed . . . ; and (5) failed to warn those nearby, who were not participating in the [e]vent, of the dangers of the [e]vent . . . ."

(Id. ¶ 23.)

Based on these allegations, the Nibbelinks' liability could be described as arising out of their ownership of the Strawberry Meadow Property.  The issue before the court, therefore, is whether the premises exclusion applies simply because the insureds' liability is dependant upon their ownership of the uninsured premises.  The court concludes that this is not enough.  California law and the plain language of the Homeowner's Policy dictate that the exclusion applies only when the injury arises out of a condition of the premises.

In Century Transit Systems, Inc. v. American Empire Surplus Lines Insurance Co., 42 Cal. App. 4th 121, 126 (2d. Dist. 1996), after a taxi driver beat two men filming a demonstration, the victims sued him for assault and battery and related claims

10

1  and brought claims against his employer for negligent hiring,
2  supervision, and retention of the driver.  Century, 42 Cal. App.
3  4th at 124.  The insurer declined to defend the employer and it
4  brought suit.  Id.  The company's policy "expressly exclude[d]
5  coverage for '. . . any claim . . . based on assault and battery
6  . . . .'"  Id. at 126.  Looking to the "objectively reasonable"
7  meaning of the terms and their context, the court concluded that
8  the "exclusion precludes coverage of any claim based on assault
9  and battery irrespective of the legal theory asserted against the
10 insured."  Id. at 127.  The Century court noted that the language
11 of the exclusion "place[ed] the focus not upon an insured's
12 conduct or intent, but rather upon the type of event in which a
13 plaintiff has sustained an injury."  Id.; see also Belmonte v.
14 Emp'rs Ins. Co., 83 Cal. App. 4th 430 (4th Dist. 2000) (exclusion
15 for bodily injury arising out of use of any car precluded
16 coverage of claims against insured for negligent failure to
17 supervise, negligent entrustment of a vehicle, and premises
18 liability when insured's niece took car keys from his store and
19 injured the victim with his car because insured's alleged
20 negligence depended on niece's use of the car); Cont'l Cas. Co.
21 v. City of Richmond, 763 F.2d 1076 (9th Cir. 1985)(assault and
22 battery exclusion precluded coverage of insured for claims based
23 on violation of the victim's civil rights because without the
24 underlying assault and battery there would have been no civil
25 rights violation).  Likewise, here, the premises exclusion
26 applies where an injury arises out of an uninsured premises, not
27 where the insureds' liability arises out of their ownership of an
28 uninsured premises.

11

California courts have held that "arising out of" means to "flow from" or be "incident to," but plaintiff has not suggested how the Wang plaintiff's bodily injury flowed from or was incident to the Strawberry Meadow Property.[5] See, e.g., Smith Kandal Real Estate v. Cont'l Cas. Co., 67 Cal. App. 4th 406, 419 (1998) (considering in third party policy context whether injury was "arising out of" out of a transaction by considering whether it flowed from or was incident to a transaction). Plaintiff suggests only that the Nibbelinks' alleged liability "has at least a minimal causal connection or incidental relationship to the conditions at and use of the Strawberry Meadow Property." (Opp'n at 16 n.11.) A "minimal connection" between the premises and the underlying bodily injury in this case is too attenuated to fit within the plain language of "arising out of." The allegations in the Wang complaint that

---

[5] Neither of the cases plaintiff relies on for this proposition, however, are directly applicable. Plaintiff first cites to Acceptance Insurance Co. v. Syufy Enterprises, 69 Cal. App. 4th 321 (1st Dist. 1999), a case involving an additional insured endorsement. See Syufy, 69 Cal. App. 4th at 328 ("['Arising out of'] broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship."). However, "[c]ases interpreting 'arising out of' as used in the additional insured endorsements and other coverage provisions are not on point because coverage provisions are liberally construed in favor of coverage, while exclusion provisions are narrowly construed against the insurer." Church Mut. Ins. Co. v. U.S. Liab. Ins. Co., 347 F. Supp. 2d 880, 885 n.4 (S.D. Cal. 2004) (citing Garvey v. State Farm Fire & Cas. Co., 48 Cal.3d 395 (1989)).

In the second case plaintiff cites, Davis v. Farmers Insurance Group, 134 Cal. App. 4th 100 (2005), the court interpreted "arising out of" in the context of a first party policy. First party policy case law has also been held "distinguishable and inapplicable" to the context of third party policies. Church Mut. Ins. Co., 347 F. Supp. 2d at 885 n.4 (citing Charles E. Thomas Co. v. Transamerica Ins. Grp., 62 Cal. App. 4th 379, 384 (2d Dist. 1998); Mariscal v. Old Republic Life Ins. Co., 42 Cal. App. 4th 1617, 1623 (2d Dist. 1996)).

12

the Strawberry Meadow Property's fences were inadequate is only incidental to how the plaintiff's injury arose. Here, the Strawberry Meadow Property is the location of the cause of the injury, not the cause.

Finally, exclusions are interpreted narrowly in favor of coverage and the duty to defend. See Church Mut. Ins. Co., 347 F. Supp. 2d at 884-85 (interpreting exclusion for claims against the insured arising out of a breach of contract narrowly to find coverage and duty to defend claims for fraud); Smith Kandal, 67 Cal. App. 4th 406 at 420-22 (interpreting exclusion narrowly in favor of coverage and finding duty to defend).[6] Here, interpreting the premises exclusion to depend on the factual allegations underlying the bodily injury creating the potential for liability, rather than more broadly to the source of the insured's liability, accords with that principle.

In sum, the premises exclusion does not preclude coverage for the claims alleged in the Wang action because the Wang plaintiff's injury simply occurred on the Strawberry Meadow Property rather than because of a condition on it. Plaintiff thus has a duty to defend the Nibbelinks under the Homeowner's Policy in that case. As a result, plaintiff would have incurred the costs it now alleges to be damages in the current action whether or not it issued the Umbrella Policy. It therefore cannot allege that defendant's negligence or negligent misrepresentation was a substantial factor in causing it harm and

---

[6] If plaintiff becomes liable for damages under the Umbrella Policy that are in excess of its coverage under the Homeowner's policy based on any indemnity or settlement obligations, it may bring suit after it has been injured.

13

cannot state a claim for relief based on either of those theories.  Accordingly, plaintiff's claims for negligence and negligent misrepresentation must be dismissed.

B.  Equitable Indemnity

"Under the equitable indemnity doctrine, defendants are entitled to seek apportionment of loss between the wrongdoers in proportion to their relative culpability so there will be 'equitable sharing of loss between multiple tortfeasors.'" Gem Developers v. Hallcraft Homes of San Diego, Inc., 213 Cal. App. 3d 419, 426 (4th Dist. 1989) (quoting Am. Motorcycle Ass'n v. Superior Court, 20 Cal. 3d 578, 597 (1978)).  To state a claim for indemnity, a plaintiff must plead: "(1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." Expressions at Rancho Niguel Ass'n v. Ahmanson Devs., Inc., 86 Cal. App. 4th 1135, 1139 (4th Dist. 2001).

In Phoenix Insurance. Co. v. United States Fire Insurance Co., 189 Cal. App. 3d 1511 (2d Dist. 1987), the court applied equitable indemnity to allow an excess insurer to recover from a primary insurer for money it paid to their joint insured. Phoenix Insurance. Co., 189 Cal. App. 3d at 1524-25.  It explained that it was relying on "the equitable principal of indemnification" rather than any duty owed by the primary insurer to the insured. Id. at 1524.  The only source of the excess insurer's obligation to the insured was the policy it issued.

The Phoenix court's broad application of equitable indemnity is foreclosed by the subsequent development of equitable indemnity doctrine, if it were ever correct at all.

14

1  See Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp., 143
2  Cal. App. 4th 1036, 1051 (1st Dist. 2006) (Pollak, J. concurring)
3  (noting "historical limitation excluding contract liability from
4  the scope of equitable indemnity").

5       "Although the body of law defining and applying
6  principles of equitable indemnity has not fully gelled but is
7  still evolving, one thing is clear: The doctrine applies only
8  among defendants who are jointly and severally liable to the
9  plaintiff." BFGC Architects Planners, Inc. v. Forcum/Mackey
10 Constr., Inc., 119 Cal. App. 4th 848, 852 (4th Dist. 2004); see
11 Stop Loss Ins. Brokers, Inc., 143 Cal. App. 4th at 1040 ("It is
12 well-settled in California that equitable indemnity is only
13 available among tortfeasors who are jointly and severally liable
14 for the plaintiff's injury."); Leko v. Cornerstone Bldg.
15 Inspection Serv., 86 Cal. App. 4th 1109, 1115 (2d Dist. 2001)
16 ("Joint and several liability is a prerequisite for equitable
17 indemnity."); see also Prince v. Pac. Gas & Elec. Co., 45 Cal.
18 4th 1151, 1158 (2009) ("Such [equitable] indemnity is premised on
19 a joint legal obligation to another for damages, but it does not
20 invariably follow fault." (internal quotation marks and citation
21 omitted)).  Joint and several liability in the context of
22 equitable indemnity is fairly expansive and "can apply to acts
23 that are concurrent or successive, joint or several, as long as
24 they create a detriment caused by several actors." BFGC, 119
25 Cal. App. 4th at 852.  "With limited exception, there must be
26 some basis for tort liability against the proposed indemnitor."
27 Id.; see Jocer Enters., Inc. v. Price, 183 Cal. App. 4th 559,
28 573-74 (2010).  It is usually based on a duty owed to the

underlying plaintiff, although vicarious liability, strict liability, and implied contractual indemnity between the indemnitor and the indemnitee can provide a basis for equitable indemnity.  BFGC, 119 Cal. App. 4th at 852.

Plaintiff has alleged only that it has an obligation to defend and indemnify the Nibbelinks based on contract.  (Compl. ¶ 8.)  It has not alleged that the Nibbelinks have acted to hold it liable for any damages via a tort action.  The court has found that it cannot state a claim for negligence or negligent misrepresentation against defendant.  Based on the principles above, in the absence of allegations of a joint obligation of both the indemnitor and indemnitee sounding in tort, plaintiff cannot state a claim for equitable indemnity.[7]  See Stop Loss Ins. Brokers, Inc, 143 Cal. App. 4th at 1040-42 & n.2 (one defendant could not recover from another on a cross-claim for equitable indemnity where the latter's liability to the plaintiff could only be found in breach of contract); cf. Miller v. Sec. Life of Denver Ins. Co., Civ. No. 11-1175, 2012 WL 1029279, at *5 (N.D. Cal. Mar. 26, 2012) (claim for equitable indemnity failed where claim asserted by the underlying plaintiff was for breach of contract).  Accordingly, plaintiff's claim for equitable indemnity must be dismissed.

---

[7] The other cases cited by cited by plaintiff to support its contention that equitable indemnity is not limited to joint tortfeasors do not support finding that it has stated a claim for equitable indemnity based on its allegation that its obligation to the Nibbelinks is based on contract.  See Aetna Life & Cas. Co. v. Ford Motor Co., 50 Cal. App. 3d 49, 53 (2d Dist. 1975) (Aetna could pled a claim for equitable indemnity from Ford where there were allegations that both were liable for a personal injury claim); Fireman's Fund Ins. Co. v. Haslam, 29 Cal. App. 4th 1347, 1350 (1st Dist. 1994) (insurer entitled to indemnity where both it and broker were liable to insured under tort law).

16

C.   Declaratory Relief

Finally, because plaintiff cannot state a claim for relief against defendant, its request for declaratory relief against defendant also falls. See Wallis v. Centennial Ins. Co., Inc., Civ. No. 08-02558 WBS, --- F. Supp. 2d ----, 2013 WL 772246, at *6 (E.D. Cal. Feb. 28, 2013); Winding v. Cal-W. Reconveyance Corp., Civ. No. 10-0041, 2011 WL 221321, at *11 (E.D. Cal. Jan. 24, 2011) (O'Neill, J.) ("The failure of the complaint as a whole demonstrates the absence of an actual controversy subject to declaratory relief. A declaratory relief action 'brings to the present a litigable controversy, which otherwise might only be tried in the future.'" (quoting Societe de Conditionnement en Aluminium v. Hunter Eng. Co., 655 F.2d 938, 943 (9th Cir. 1981))). Accordingly, plaintiff's claim for declaratory relief must be dismissed.[8]

Generally, leave to amend should be denied only if allowing amendment would cause undue delay, unduly prejudice the opposing party, or be futile, or if the moving party has acted in bad faith. Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir.2008). Plaintiff did not state a claim for relief for negligence, negligent misrepresentation, or equitable indemnity, and there is no indication that it could amend its pleadings to do so. As a result of plaintiff's failure to state any claim for relief, the court founds that its request for declaratory relief must be dismissed for lack of an underlying

---

[8] Because the court has determined that plaintiff cannot state a claim for relief for negligence and negligent misrepresentation and has dismissed its request for declaratory relief, it declines to decide whether the Complaint could also be dismissed on Rule 19 or Rule 12(b)(1) grounds.

17

1 | controversy between the parties.  Thus, allowing plaintiff to
2 | amend its Complaint would be futile.
3 |       IT IS THEREFORE ORDERED that defendant's motion to
4 | dismiss be, and the same hereby is, GRANTED without leave to
5 | amend.
6 | DATED: May 14, 2013

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE